IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT H. WEINSTEIN,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>    Defendant._____/ | No. C 09-0347 CRB<br><br>**MEMORANDUM AND ORDER** |

Plaintiff sued the Postal Service for breach of an insurance contact. Now pending before the Court is defendant's motion to dismiss for lack of subject matter jurisdiction or in the alternative for summary judgment. After carefully considering the papers filed by the parties, and having had the benefit of oral argument, plaintiff's motion is DENIED.

### ALLEGATIONS OF THE COMPLAINT

On January 24, 2008, plaintiff mailed four antique, collectible notes of United States currency to a dealer in Dallas, Texas. In connection with the mailing, plaintiff purchased the maximum insurance offered by defendant United States Postal Service: $25,000. At the time plaintiff mailed the package, the notes were worth approximately $84,600.

The Postal Service lost the package. Plaintiff filed a claim under the insurance. The Postal Service decided to pay plaintiff only $5,347.57. Plaintiff appealed the decision and has fully exhausted his administrative remedies. He subsequently filed this breach of

contract action seeking the full amount of the insurance, that is, $25,000 less the amount the Postal Service agreed to pay.

## DEFENDANT'S MOTION

Defendant Postal Service moves to dismiss for lack of subject matter jurisdiction or in the alternative for summary judgment.

## DISCUSSION

### I. Subject Matter Jurisdiction

Plaintiff asserts subject matter jurisdiction under 28 U.S.C. section 409(a): "the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." Despite the plain language of this statute, the Postal Service moves to dismiss on the ground that this Court does not have subject matter jurisdiction of the breach of contract action.

### A. The Court has subject matter jurisdiction under section 409(a).

The Postal Service first cites Peoples Ga, Light & Coke Co. v. U.S. Postal Service, 658 F.2d 1182, 1189 (7th Cir. 1981), to support its argument that section 409(a)--which expressly confers subject matter jurisdiction--is merely a waiver of sovereign immunity and is not a jurisdictional statute. In its Reply Memorandum defendant takes a different approach: it argues that section 409(a) does not confer subject matter jurisdiction and instead requires a substantive legal framework of federal law to confer jurisdiction. It contends that the "substantive legal framework of federal law" for a breach of contract claim against a federal agency is the Tucker Act, and under that Act exclusive jurisdiction lies in the Court of Federal Claims. In other words, the Postal Service argues that there is no subject matter jurisdiction because there is no cause of action, and there is no cause of action because under the Tucker Act plaintiff's claim must be brought in the Court of Federal Claims.

> [T]he Postal Service's argument,. . . that subject matter jurisdiction is absent without a cause of action is "seriously flawed" because "whether or not 'a cause of action' exists goes to the merits, not to the question of subject-matter jurisdiction.". . . The fact that section 409(a) does not provide a cause of action or that [the plaintiff] will not prevail on the merits is irrelevant to the district court's jurisdiction over the suit.

2

Licata v. United States Postal Service, 33 F.3d 259, 262-63 (3rd Cir. 1994). Thus, the first question the Court must ask is whether it has subject matter jurisdiction; if it does, then it asks whether plaintiff states a claim.

Section 409(a), by its plain terms, gives the district courts jurisdiction of actions against the Postal Service and the Ninth Circuit has so held. Wright v. United States Postal Service, 29 F.3d 1426, 1430 (9th Cir. 1994) (holding that district court had jurisdiction to decide a subcontractor's contract claim against the Postal Service). Prior to Wright the Ninth Circuit had stated that section 409(a) merely removes barriers to sovereign immunity. Janakes v. United States Postal Service, 768 F.2d 1091, 1093 (9th Cir. 1985). In Flamingo Indus. v. United States Postal Service, 302 F.3d 985 (9th Cir. 2002), *rev'd on other grounds*, United States Postal Service v. Flamingo, 540 U.S. 736 (2004), the Ninth Circuit reconciled this apparent conflict:

> [C]areful reading of our cases reveals that no true inconsistency exists because Janakes is distinguishable. In Janakes, the issue we decided was whether § 409(a) created a substantive right to bring suit. See Janakes, 768 F.2d at 1093. We held it did not. Id. Although some language in Janakes suggests that § 409(a) does not confer subject matter jurisdiction, that language is dicta. Indeed, the Seventh Circuit, which in Peoples Gas created the decision that prompted our Janakes language, later adopted a reading of Peoples Gas consistent with the reading we now apply to Janakes. We are satisfied that our reading, following Wright, is correct. The plain language of § 409(a) states that the district courts "shall have original jurisdiction"-the same words used to grant jurisdiction elsewhere in the United States Code.

Id. at 996. In other words, the grant of jurisdiction in section 409 does not create a cause of action; a plaintiff must still have a valid claim for relief against the Postal Service. If the plaintiff does have such claim, however, there is jurisdiction absent some other statute that removes the jurisdiction.

The Ninth Circuit's decision in Currier v. Potter, 379 F.3d 716 (9th Cir. 2004) is distinguishable. There, as in Janakes, the court was considering whether the plaintiff had a valid claim for relief, that is, whether a particular Postal Service policy created a private right of action. The court held that section 409's grant of jurisdiction did not create a private right of action. Id. at 725. While the court quoted the confusing language from Janakes that

3

1 suggested it was discussing subject matter jurisdiction, the actual issue the court was
2 addressing was whether section 409 created a private right of action.

### B.     Plaintiff has a claim for breach of contract against the Postal Service.

Having determined that the Court has subject matter jurisdiction, the next inquiry is whether plaintiff has stated a valid claim for relief, that is, whether he may bring a claim for breach of contract against the Postal Service.  See Currier, 379 F.3d at 724 (holding that if there is a waiver of sovereign immunity the next question is "whether the source of substantive law upon which the claimant relies provides an avenue for relief.").  The Postal Service does not contend that no claim for breach of an insurance contract exists; instead, it argues that the Tucker Act requires plaintiff's claim for breach of contract to be heard in the Court of Federal Claims.

The Tucker Act gives the Court of Federal Claims exclusive jurisdiction of all contract claims against the United States exceeding $10,000, 28 U.S.C. § 1491(a), while the district courts have concurrent jurisdiction of contract claims not exceeding $10,000.  28 U.S.C. § 1346(a)(2).  Defendant Postal Service argues that as this is a contract action against an entity of the United States exceeding $10,000, exclusive jurisdiction lies in the Court of Federal Claims.

The Ninth Circuit has not addressed this issue.  In Licata v. United States, 33 F.3d 259 (3rd Cir. 1994), the Third Circuit squarely rejected the Postal Service's argument:

> [I]t is well settled that a claim brought against the Postal Service in its own name is not a claim against the United States and thus is not governed by the Tucker Act.  The Federal Circuit, the court of appeals that probably spends the most time mastering the intricacies of jurisdiction under the Tucker Act, has noted the unusual position of the Postal Service in that "in contradistinction to other federal entities, [it] may sue and be sued on contract claims in courts other than the Court of Federal Claims." Benderson Dev. Co. v. United States Postal Serv., 998 F.2d 959, 962 (Fed.Cir.1993) (citing Pearlstine v. United States, 469 F.Supp. 1044, 1046 (E.D. Pa. 1979)).  It concluded that the interaction between the Tucker Act and section 409(a) was such that if a "dispute between [plaintiff] and the Postal Service lies in contract, [then it should] be resolved by the district court in the exercise of its every-day jurisdiction over contract matters affecting the Postal Service."  Thus, we conclude that the Tucker Act does not deprive the district court of jurisdiction over suits against the Postal Service.

4

Id. at 263-64. The Eighth Circuit has also expressly held that the Tucker Act does not apply to contract actions against the Postal Service. Continental Cablevision of St. Paul, Inc. v. United States Postal Service, 945 F.2d 1434, 1440 (8th Cir. 1991).

The Postal Service does not cite any case to the contrary; instead, it claims the Supreme Court's recent decision in United States Postal Service v. Flamingo Industries, 540 U.S. 736 (2004), effectively overrules these cases. In Flamingo the issue was whether the United States Postal Service is a "person" within the meaning of the federal antitrust laws. The Court held that the Postal Service, "in both form and function, is not a separate antitrust person from the United States." Id. at 748. The case is thus limited to the antitrust laws and does not apply to the Postal Service and the Tucker Act. Accordingly, the Postal Service's motion to dismiss must be denied.

## II.     Summary Judgment

The Postal Service moves for summary judgment on the breach of contract claim. Plaintiff insured the notes for $25,000, the maximum amount allowed, although he contends in his complaint that notes were worth $84,000. Nonetheless, he does not seek $84,000; he seeks only the $25,000 for which he insured the notes.

The Postal Service Domestic Mail Manual ("Manual") has the full force and effect of the law. See Jamil v. U.S. Postal Service, 2006 WL 988825 *2 (N.D. Cal. April 14, 2006). Section 503.2.3.1 (Full Value) of the Manual provides:

> Regardless of any insurance that may cover the article, the mailer must always declare its full value to the USPS when presenting it for registration and mailing (see chart below). The mailer must tell the USPS clerk (or enter on the firm sheet if a firm mailer) the full value of mail matter presented for registration. Private insurance carried on Registered Mail does not modify the requirements for declaring the full value. The accepting USPS employee may ask the mailer to show that the full value of the matter presented is declared, and may refuse to accept the matter as Registered Mail if a satisfactory declaration of value is not provided. Only articles of no value may be mailed as Registered Mail without insurance.

The Manual provides further that indemnity is not paid if the "[r]equested replacement value exceeded actual value at the time and place of mailing." Manual § 609.4.3(d). Indemnity is paid for the "[a]ctual value of lost articles at the time and place of mailing." Id. § 609.4.1(a). "The USPS does not make payment for more than the actual value of the article or, for bulk

5

insurance, for more than the wholesale cost of the contents to the sender if a lesser amount. The USPS does not make payment for more than the maximum amount covered by the fee paid." § 609.5.1.

The Postal Service argues that because plaintiff contends that the notes were worth $84,000, but he only declared their value as $25,000 when he applied for insurance, he did not declare the true value and thus the Postal Service has no obligation to indemnify; in other words, the contract of insurance is void as a result of the misrepresentation of the actual value. Plaintiff responds that at the time he mailed the notes he estimated their actual value as $25,000. He had "paid about $12,000 for them, and . . . had hoped that they had doubled in value over the eight years since [he] purchased them." He did not review any resources to ascertain the market value of the notes before mailing them. After his package was lost, he contacted a dealer to ascertain the notes' market value. He was stunned to learn of an estimated auction value of $70,000; nonetheless, because he had only insured the notes for $25,000 he only made a claim for that amount. Id. ¶ 8.

The Postal Service cites Mastoloni & Sons v. United States Postal Service, 546 F.Supp. 415 (S.D.N.Y. 1982), for the proposition that understating the value of the notes renders the insurance contract unenforceable. In Mastoloni, a jeweler intentionally insured a necklace worth $25,000 for $2500. The district court held that the contract of insurance was void because of the misrepresentation:

> By entering the necklace at 10 percent of its true value in the mailing book, Mastoloni paid a lesser mailing fee and violated the terms of the registered mail contract. . . . The Postal Service is only liable to the extent that it agrees to be liable. . . . In the instant case, the Postal Service only agreed to be liable if the true value of the parcel was entered in the firm mailer and thus declared to the postal authorities. Accordingly, plaintiff's conceded failure to enter the known value of the necklace precludes any indemnification by the Postal Service.

Id. at 419. The Court has not located any cases that have discussed Mastoloni; in any event, its facts are distinguishable.

Here, unlike Mastoloni, plaintiff did not save money by "under insuring" the notes; he paid the maximum amount and seeks only that amount. Moreover, the Mastoloni court

6

emphasized that the plaintiff failed to enter the true "known" value of the notes. Here, in contrast, the evidence viewed in the light most favorable to plaintiff supports an inference that he believed at the time he insured the notes that their actual value was $25,000. As he explains, if he thought the notes were worth more he would have shipped each in a separate package so each could be insured for a higher amount. Thus, the issue here–unlike Mastoloni--is whether a Postal Service contract of insurance is void when an insured in good faith estimates a particular value and then after the fact learns that value was too low, but nonetheless requests payment of only the value declared.

The Postal Service's draconian interpretation of its regulations leads to nonsensical results. Under the Postal Service's argument, if the insured mistakenly identifies the mailed item as worth $25,000, but the Postal Service believes the evidence establishes the item is worth, say, $25,500, the insurance contract is void–even though it is the Postal Service that lost the package in the first instance. The Postal Service has also failed to offer any evidence as to how it would have acted differently if plaintiff had declared the value as more than $25,000; it does not contend that it would not have offered any insurance if the package's value exceeded the maximum insurable amount.

The Postal Service also argues that the Manual clearly states that indemnity is not paid when the "requested replacement value" exceeds actual value. Manual § 609.4.3(d). The word "requested" defeats the Postal Service's motion: the *requested* replacement value in this case is $25,000. Moreover, the Postal Service's argument contradicts it own conduct in this case. Even though it now contends it has no obligation to indemnify at all, it agreed to pay plaintiff more than $5,000 under the contract of insurance.

Finally, the Postal Service argues that plaintiff cannot prove the value of the notes because he did not have the notes appraised before he mailed them. The Postal Service does not cite any law or regulations that require an appraisal; nor does it cite any law or regulations that prohibit consideration of plaintiff's evidence, that is, evidence from the year he bought the notes and a dealer's current estimate of value based on that evidence. The Postal Service has not met its summary judgment burden.

7

## CONCLUSION

For the reasons stated above, the Postal Service's motion to dismiss or in the alternative for summary judgment is DENIED.  The parties are directed to appear for an initial case management conference at 8:30 a.m. on June 19, 2009.  They shall submit a revised case management conference statement if necessary in light of this Order.

**IT IS SO ORDERED.**

Dated: June 2, 2009



CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE